### POOL SHIPPING CO. v. HANSON PRODUCE CO.

(District Court, D. Maryland. February 26, 1924.)

1. Shipping ⬳47—Charter party construed as to employment of stevedore.

Clause of charter party, "the stevedore employed by the vessel to be approved by charterer," means that appointment or nomination of stevedore is to be made in the first instance by the vessel, and submitted to charterer for its approval, which it, though having wide discretion as to approval or disapproval, cannot arbitrarily or unreasonably withhold, and what is unreasonable is to be determined under the circumstances of the particular case.

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. Shipping ⬅️47—Charterer's disapproval of stevedore nominated by vessel held unreasonable.**

Charterer's rejection of stevedore appointed by the vessel, and disapproval of a further list submitted, all of whom were qualified and efficient, and insistence on another, whose price was 20 per cent. greater than that of the vessel's appointee, was unreasonable; no satisfactory explanation therefor being given.

**3. Shipping ⬅️58(2)—Damages for charterer's unreasonable rejection of stevedore designated by vessel, difference in price.**

Damages for charterer's unreasonable rejection of the stevedore designated by the vessel, and others submitted by the vessel, was the difference between the bid of the designated stevedore and the amount that the vessel had to pay the stevedore, whom only the charterer would accept; the testimony of one of the nominees, who made no bid, as to what it would have charged, had its nomination been approved, being merely speculative, and therefore not ground for holding the damages to be nominal.

In Admiralty. Libel by the Pool Shipping Company against the Hanson Produce Company. Decree for libelant.

Kirlin, Woolsey, Campbell, Hickcox & Keating, of New York City, and Janney, Ober, Slingluff & Williams, of Baltimore, Md., for libelant. Harry N. Abercrombie, of Baltimore, Md., for respondent.

SOPER, District Judge. The case turns on the interpretation of the following language in the charter party: "The stevedore employed by the vessel to be approved by charterers." The steamer Wearpool was under a charter party to proceed to Baltimore, and load, at her expense, a cargo of grain for charterers. When the vessel arrived, the owner designated the Terminal Stevedoring Company to do the stevedoring work. This appointment was rejected by the charterer. Later the owner submitted for approval a list of three stevedores, including the Terminal, from which the charterer might select one. All were rejected, and the charterer indicated that it would accept the Chesapeake Stevedoring Company, but no other. The Terminal Company was willing to unload the vessel for $786.25, while the price of the Chesapeake Stevedoring Company was $936.52. Since the charterer was unwilling to accept any other stevedore, the work was given to the Chesapeake Company, under protest, and the owner sues for the additional expense to which it was put by the action of the charterer.

[1] It is not denied that all of the stevedores nominated by the owner were qualified to do the work, and were efficient and expeditious in the services which they were accustomed to render at the port of Baltimore. On prior occasions, the charterer had the benefit of the services of not only the Chesapeake, but also of the Terminal Company, and had found both of them to be satisfactory. The charterer's contention is that under the clause of the charter party above set out, and under the circumstances of the case, it had the right to reject all of the nominees of the owner, and insist upon the Chesapeake Company. This contention cannot be sustained. The meaning of the clause is that the appointment or nomination of the stevedore is to be made in the first instance by the vessel, and then submitted to the charterer for its

approval. The owner does not have the sole right of appointment, and the charterers are clothed with a wide discretion in the exercise of their right of approval or disapproval. But such approval cannot be arbitrarily or unreasonably withheld, and what is unreasonable is a matter for determination under the circumstances of the particular case.

[2] Under the circumstances of the case at bar, it was unreasonable for the charterer to insist upon a particular stevedore, when the work could have been done by an equally competent company for 20 per cent. less. The charterer insists, however, that the rates of the Chesapeake Company were the current rates, and were therefore not unreasonable. In view of the wide difference in the bids of the stevedores, it is difficult to ascertain what was the current rate at the time; but in determining the reasonableness of a rate at a particular time and place a most important consideration is the price at which the work can be done by competent parties. It was found in this case that the lowest bid was submitted by the Terminal Company, and it was so much lower than the bid of the stevedore preferred by the charterer as to call for some explanation of its rejection of the nominee of the ship. The vice president of the charterer testified in the case and was unable to give an adequate explanation. He suggested that, at times when the charterer had two vessels loading under charter at the same port, it might be desirable to switch the stevedore from one vessel to another, and that it was also desirable that the ship be loaded by a stevedore with whom the charterer was acquainted. The charterer, however, had but one ship loading at this time, and it had had previous satisfactory experience with the Terminal Company.

The matter of rates would not necessarily determine the question in all cases, for other considerations might be present which would render the rejection of a capable stevedore proper, even though his bid might be the lowest, but in the present case the difference in price was a controlling consideration, and compels the conclusion that the action of the charterer was unreasonable.

[3] The charterer also contends that in any event the damages should be nominal, because of evidence given by one of the three rejected nominees that if it had been given the work, it would have charged a price in excess of that actually charged by the Chesapeake Company. But this circumstance cannot control. The nominee in question made no bid at the time, and what it would have charged, had it been approved, is now merely a matter of speculation. Its undisclosed intention does not render less unreasonable or arbitrary the rejection of the lower bid of the Terminal Company, which was actually made.

The decree should be for the difference between the bid of the Terminal Company and the amount paid the Chesapeake Company.